IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| EDWARD GLENN LEWIS, MARK MORTON and DON BREWSTER, On Behalf of Themselves and All Others Similarly Situated, § § § § | | |
| Plaintiffs, § | | |
| § | CIVIL ACTION NO. 4:15-cv-13 | |
| V. § | | |
| § | JURY TRIAL DEMANDED | |
| BRAZOS ROCK, INC. § | | |
| § | COLLECTIVE ACTION | |
| Defendant. § | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, EDWARD GLENN LEWIS ("Lewis"), MARK MORTON ("Morton") and DON BREWSTER ("Brewster") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Complaint against BRAZOS ROCK, INC. ("Brazos Rock" or "Defendant"), showing in support as follows:

### I.    NATURE OF THE CASE

1.    This is a civil action brought by Plaintiffs pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendant's: (a) failure to pay Plaintiffs time and one-half their regular rates of pay for all hours worked over 40 during each seven day workweek; and (b) failure to properly calculate Plaintiffs' regular rates of pay when determining the overtime premium owed.

2.    Plaintiffs file this lawsuit on behalf of themselves and as a FLSA collective action on behalf of all other similarly situated individuals.

3. The scope of the individual and collective action claims in this lawsuit are limited to individuals who worked at/from/through Defendant's Kermit, Texas district office/yard (the "Kermit Yard") for the time period of three years preceding the date this lawsuit and forward.

4. Plaintiffs and the collective action members seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs and post-judgment interest.

## II.   THE PARTIES, JURISDICTION AND VENUE

### A.   Plaintiff Edward Glenn Lewis

5. Lewis is a natural person who resides in Winkler County, Texas. He has standing to file this lawsuit.

6. Lewis is a former employee of Defendant.

7. Lewis worked as an oilfield/pipeline worker for Defendant from approximately July 2013 to September 2014.

8. Lewis was paid an hourly rate by Defendant of approximately $24.00 per hour.

9. Lewis was paid a per diem of approximately $100 per day by Defendant that was not included in his regular rate of pay when calculating his overtime wages owed in any workweek.

### B.   Plaintiff Mark Morton

10. Morton is a natural person who resides in Bexar County, Texas. He has standing to file this lawsuit.

11. Morton is a former employee of Defendant.

12. Morton worked as an oilfield/pipeline worker for Defendant for many workweeks during the time period between approximately July 2013 to September 2014.

13. Morton was paid an hourly rate by Defendant of approximately $14.00 per hour.

14. Morton was paid a per diem of approximately $100 per day by Defendant that was not included in his regular rate of pay when calculating his overtime wages owed in any workweek.

### C. Plaintiff Don Brewster

15. Brewster is a natural person who resides in Winkler County, Texas. He has standing to file this lawsuit.

16. Brewster is a former employee of Defendant.

17. Brewster worked as an oilfield/pipeline worker for Defendant from approximately March 2012 to January 26, 2014.

18. Brewster was paid an hourly rate by Defendant of approximately $28.00 per hour.

19. Brewster was paid a per diem of approximately $100 per day by Defendant that was not included in his regular rate of pay when calculating his overtime wages owed in any workweek.

### D. Collective Action Members

20. The putative collective action members are all current and/or former oilfield/pipeline employees of Defendant who work/worked at/from/through the Kermit Yard, are/were paid hourly, and who are/were not paid: (a) time and one-half their regular rates of pay for all hours worked over 40 during each seven day workweek; and (b) all overtime premium compensation owed due to Defendant's miscalculation of their regular rates of pay.

21. The relevant time period for the claims of the putative collective action members is three years preceding the date this lawsuit was filed and forward.

22. All of the putative collective action members are similarly situated to Plaintiffs, and to one another, within the meaning of Section 216(b) of the FLSA.

### E. Defendant Brazos Rock, Inc.

23. On information and belief, Defendant is a domestic corporation incorporated under the laws of the State of Texas.

24. During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

25. Defendant maintains multiple district offices/yards in Texas from which construction workers, support personnel, supplies and equipment are based and dispatched on a variety of work projects, including oil and/or gas exploration and production projects. Those district offices/yards include locations in Weatherford, Texas, Bowie, Texas, Pleasanton, Texas, Cuero, Texas, Midland, Texas and Dayton Texas. Defendant also maintains a district office/yard in Columbus, Ohio.

26. Defendant's Kermit Yard is/was located at or near 1230 Poplar Street, Kermit, Winkler County, Texas. On information and belief, Defendant ceased operations at and shut down the Kermit Yard in approximately January 2015. Plaintiff and the putative collective action members worked at/from/through the Kermit Yard primarily providing construction related services in connection with oil and/or gas exploration/production operations, namely pipeline construction/repair operations.

27. At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

28. At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

29. At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

30. For example, Defendant employed two or more employees who regularly engaged in commerce in their daily work. Examples of that commerce include construction and repair of pipelines and other services offered/provided by Defendant to customers in Texas and states other than Texas and communications by phone, mail, and internet with customers/prospective customers in Texas and states other than Texas.

31. Furthermore, Defendant employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, track hoes, vehicles, pipeline construction equipment and supplies/materials used in connection with pipeline construction and repair.

32. On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

33. Defendant may be served with summons through its registered agent, Mr. Curtis Chester, 1813 Banks Drive, Weatherford, Texas 76087.

### F. Jurisdiction and Venue

34. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

35. During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

36. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely 29 U.S.C. §§ 201-219.

37. Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district. Plaintiffs and the collective action members were employed by Defendant in this District, and at all relevant times, Defendant transacted business in this District.

38. Venue is proper in the Pecos Division of the United States District Court for the Western District of Texas because, as previously identified, a substantial part of the events giving rise to Plaintiffs' claims occurred in this Division and Defendant maintained or maintains business operations within the Pecos Division.

### III.   FACTUAL BACKGROUND

39. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

40. Plaintiffs primarily provided oilfield/pipeline construction related work as employees of Defendant. Plaintiffs' primary work was manual labor in connection with oilfield/pipeline work in and around Winkler County, Texas. Although Plaintiffs were assigned to Defendant's Kermit Yard located at or near 1230 Poplar Street, Kermit, Winkler County, Texas, Plaintiffs' typical work in a workday primarily included work at that yard in addition to work on pipelines/oilfield projects many miles from that yard, routinely in remote areas.

41. Defendant paid Plaintiffs an hourly rate in the approximate amounts previously stated.

42. Additionally, Plaintiffs were generally paid a per diem of approximately $100 per day regardless of the amount of actual work-related expenses they incurred. That per diem was not included in Plaintiffs' respective regular rates of pay.

43. Plaintiffs were non-exempt employees under the FLSA. When Plaintiffs worked more than 40 hours in a seven day workweek, they were entitled to be paid overtime premium compensation at time and one-half their respective regular rates of pay for each and every hour worked over 40.

44. Defendant had a practice and policy to generally pay Plaintiffs for 10 hours of work per workday, regardless of the amount of hours actually worked, and required those 10 "paid" hours to be spent at the oilfield/pipeline worksite. In other words, work performed at places other than the oilfield/pipeline worksite was generally not paid.

45. For example, Lewis operated a track-hoe for Defendant, and typically started his workday at 6:00 a.m. by reporting to work at the Kermit Yard and performing work such as loading fuel in a transportable storage tank which he then transported to the relevant oilfield/pipeline worksite for use in Defendant's track hoe he operated. Additionally, safety meetings routinely took place once per week at the Kermit Yard prior to traveling to the oilfield/pipeline worksite. This time from reporting to the Kermit Yard to the arriving at the oilfield/pipeline worksite was sometimes approximately two hours or more per day. However, Defendant's practice and policy was to only pay Lewis for 10 hours starting at the time he arrived at the oilfield/pipeline worksite as opposed to the time he actually began the workday performing integral and indispensable work activities preliminary to arriving at the oilfield/pipeline worksite. Similarly, when Lewis drove back to the Kermit Yard after 10 hours at the worksite, Defendant did not pay him for that time, including time spent working after

arriving at the Kermit Yard doing things such as offloading supplies and/or equipment or preparing for the next workday. This work performed before and after arriving at the oilfield/pipeline worksite was integral and indispensable to the work activities performed at such worksite. This resulted in significant unpaid hours, including unpaid overtime hours, for Lewis.

46.     Morton assisted track hoe operators like Lewis in connection with Defendant's oilfield/pipeline work. During a typical workday, Morton was required to report at the Kermit Yard in the morning at approximately 6:00 a.m. where he performed work, such assisting with uploading supplies, including fuel for track hoes, for transport to the relevant oilfield/pipeline worksite. Morton also attended routine safety meetings at the Kermit Yard prior to departing for the relevant oilfield/pipeline worksite. Like Lewis, Defendant paid Morton for 10 hours per day which were required to be spent at the oilfield/pipeline worksite and did not pay Morton from the time he reported to the Kermit Yard and performed work and forward. Like Lewis, that could be approximately two or more hours unpaid time between performing work at the Kermit Yard and arriving at the oilfield/pipeline worksite in a given workday. Similarly, when Morton left the oilfield/pipeline worksite upon completion of his 10 hours "paid" work, he regularly traveled back to the Kermit Yard where he performed additional work, such as offloading equipment and supplies and preparing for the next workday without pay. This work performed before and after arriving at the oilfield/pipeline worksite was integral and indispensable to the work activities performed at such worksite. This resulted in significant unpaid hours, including unpaid overtime hours, for Morton.

47.     Brewster provided mechanical assistance/repair for Defendant's equipment, such as track hoes, used in connection with the oilfield/pipeline construction operations. Like the other Plaintiffs, Defendant only paid Brewster for 10 hours per day regardless of the number of

hours he worked in a given workday. Like the other Plaintiffs, Brewster reported to the Kermit Yard to gather and load equipment and supplies, including the loading of fuel, into a vehicle which he then drove to an oilfield/pipeline worksite of Defendant. Defendant did not pay Brewster for that work, and like the other Plaintiffs, paid Brewster for only 10 hours per day regardless of the actual hours worked. Similar to the other Plaintiffs, Brewster was also not paid for travel time back to the Kermit Yard, and work performed thereafter at that yard, such as offloading equipment or supplies and preparing for the next workday. This work performed before and after arriving at the oilfield/pipeline worksite was integral and indispensable to the work activities performed at such worksite. As a result of Defendant's practice/policy, Brewster experienced significant unpaid hours, including unpaid overtime hours.

48. Plaintiffs all received per diem pay generally in the amount of approximately $100 per day worked regardless of their actual reimbursable non-personal business expenses. As Plaintiffs were assigned to the Kermit Yard, and generally returned to their personal residences at the end of each workday where the slept and had meals, Defendant's labeling of that remuneration as a per diem does not reflect individualized approximations of each Plaintiff's reimbursable travel expenses or expenses incurred on behalf of the employer in furtherance of the employer's business interests. Defendant's practice/policy of not including that non-bona fide per diem pay in Plaintiffs' respective regular rates of pay resulted in Plaintiffs not being paid all overtime wages owed by Defendant in violation of the FLSA.

49. On information and belief, Defendant did not make, keep or require an accurate record of hours worked by Plaintiffs before they arrived and after they departed the relevant oilfield/pipeline worksite on a daily basis.

50. During their employment with Defendant, Plaintiffs worked with numerous other oilfield/pipeline employees of Defendant at/from/through the Kermit Yard. Like Plaintiffs, those other employees were paid by the hour, generally received a per diem of $100 per day in addition to their hourly pay, and were subject to the aforementioned practice/policy of Defendant to not pay them for all hours worked and/or to miscalculate their regular rates of pay by not including non-bona fide per diem pay in the regular rate of pay. Like Plaintiffs, and on information and belief, Defendant did not make, keep or require an accurate record of hours worked by those other employees before they arrived and after they departed the relevant oilfield/pipeline worksite on a daily basis.

## IV.  CONTROLLING LEGAL RULES

51. The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

52. "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

53. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

54. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours

worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

55.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

56.     With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

57.     Bona fide per diem payments which reflect "reasonable payments for traveling expenses, or other expenses incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer" may be excluded from the regular rate of pay. 29 C.F.R. § 778.216. "[O]nly the actual or reasonably approximate amount of the expense is excludable from the regular rate. If the amount paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." 29 C.F.R. § 778.217(c).

58.     " The expenses for which reimbursement is made must in order to merit exclusion from the regular rate …, be expenses incurred by the employee on the employer's behalf or for his benefit or convenience. If the employer reimburses the employee for expenses normally incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate thereby. An employee normally incurs expenses in traveling to and from work, buying lunch, paying rent, and the like. If the employer reimburses him for these normal everyday

expenses, the payment is not excluded from the regular rate as 'reimbursement for expenses.' Whether the employer 'reimburses' the employee for such expenses or furnishes the facilities (such as free lunches or free housing), the amount paid to the employee (or the reasonable cost to the employer or fair value where facilities are furnished) enters into the regular rate of pay… ." 29 C.F.R. § 778.217(d).

59.     Where the amount designated by the employer as a per diem allowance is not "reasonably approximated [to the employee's] reimbursable expenses," that per diem payment must be factored into the employee's regular rate of pay. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1035, 1041 (5th Cir. 2010).

60.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

## V.     FLSA CLAIMS

61.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

62.     All conditions precedent to this suit, if any, have been fulfilled.

63.     At relevant times, Defendant is/was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

64.     At relevant times, Defendant is/has been an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

65.     Each Plaintiff and putative class member working out of/assigned to the Kermit Yard was an employee of Defendant. 29 U.S.C. § 203(e).

66.     Plaintiffs and the putative class members are/were paid an hourly rate of pay by Defendant.

67. Plaintiffs and the putative collective action members regularly work/worked in excess of 40 hours per seven-day workweek as employees of Defendant during the time period relevant to this lawsuit.

68. Defendant is/was required to pay Plaintiffs and the putative class members time and one-half their respective regular rates of pay for all hours worked over 40 in a seven day workweek. 29 U.S.C. § 207(a)(1).

69. Defendant failed to pay Plaintiffs and putative collective action members overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

70. Defendant did not make and keep an accurate record of all hours worked by Plaintiffs and the putative class members as required by the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Namely, Defendant did not make and keep a record of the exact number of hours worked by Plaintiffs and the putative class members before arriving at and after leaving the relevant oilfield/pipeline worksite.

71. Plaintiffs and the putative class members are/were generally paid a per diem of $100 per day in addition to their hourly pay.

72. The regular rate of pay for Plaintiffs and the putative class members must be calculated by considering their respective hourly rates and non bona-fide per diem pay. 29 U.S.C. § 207(e); 29 C.F.R. §§ 778.117, 778.216 & 778.217.

73. The putative collective action members are/were similarly situated to the Plaintiffs and to each other under the FLSA. 29 U.S.C. § 203(e).

74. Defendants' violations of the FLSA are/were willful within the meaning of 29 U.S.C. § 255(a). For example, and as described above in detail, Defendants required, permitted, and/or encouraged under payment of actual hours worked by Plaintiffs and the putative collective action members. Defendants were aware that Plaintiffs and the putative collective action members were not paid for all hours worked over 40 in a workweek. Defendants were aware that non-bona fide per diem pay was not included in the regular rates of pay of Plaintiffs and the putative class members. Plaintiffs and the putative collective action members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed forward for their FLSA claims.

75. Plaintiffs and the putative collective action members seek all damages available for Defendant's failure to timely pay all overtime wages owed.

## VI.    FLSA COLLECTIVE ACTION

76. Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (Fish, J.) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (Boyle, J.) (same).

77. Plaintiffs seek to represent a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all current and former oilfield/pipeline workers who are/were employed by Defendant at/from/through the Kermit Yard and who are/were not paid all overtime compensation owed for all hours worked over 40 in each and every workweek. Those overtime claims include Defendant's failure to pay those employees for all hours worked and failure to accurately calculate their regular rates of pay when determining the overtime premium owed.

The relevant time period for this collective action is three years preceding the date this lawsuit was filed forward, or such other time period deemed appropriate by the Court.

78. Plaintiffs reserve the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding.

79. Plaintiffs further reserve the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VII.   JURY DEMAND

80. Plaintiffs demand a jury trial.

## VIII.   DAMAGES AND PRAYER

81. Plaintiffs ask that the Court issue a summons for Defendant to appear and answer, and that Plaintiffs and the Collective Action Members be awarded a judgment against Defendant or order(s) from the Court for the following:

   a. An order conditionally certifying this case as a FLSA collective action and requiring notice to be issued to all putative collective action members;

   b. All damages allowed by the FLSA, including back overtime wages;

   c. Liquidated damages in an amount equal to back FLSA mandated wages;

   d. Legal fees;

   e. Costs;

   f. Post-judgment interest;

   g. All other relief to which Plaintiffs and the Collective Action Members are entitled.

Respectfully submitted,

By:    s/ Allen R. Vaught
        Allen R. Vaught
        Attorney-In-Charge
        TX Bar No. 24004966
        MS Bar No. 101695
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas 75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        avaught@baronbudd.com

ATTORNEYS FOR PLAINTIFFS