IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| EDWARD GLENN LEWIS, MARK MORTON, and DON BREWSTER, on behalf of themselves and all others similarly situated, | § § § § § § | CV NO. 4:15-CV-13 |
| Plaintiffs, | § § | |
| v. | § § | |
| BRAZOS ROCK, INC., | § § | |
| Defendant. | § § § | |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND
TO ISSUE NOTICE

Before the Court is a Motion to Conditionally Certify a Collective Action and to Issue Notice filed by Plaintiffs Edward Glenn Lewis, Mark Morton, and Don Brewster, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") (Dkt. # 18). On October 14, 2015, the Court held a hearing on the Motion. Allen R. Vaught, Esq., represented Plaintiffs, and John M. Rogers, Esq., represented Defendant Brazos Rock, Inc. ("Defendant"). After careful consideration of the supporting and opposing memoranda and the arguments presented at the hearing, the Court, for the reasons that follow,

1

**GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Conditionally Certify a Collective Action and to Issue Notice.

BACKGROUND

This case arises out of Plaintiffs' employment by Defendant as construction services workers on oilfield and pipeline projects. Defendant's business involves constructing pipelines and related infrastructure, drilling sites, holding tanks, and roads for oil and gas companies. ("Carson Decl.," Dkt. # 22-1 ¶ 3.) Plaintiffs work or formerly worked for Defendant as hourly employees based out of Defendant's facility in Kermit, Texas (the "Kermit Yard"). ("Lewis Decl.," Dkt. # 19-1, Ex. A ¶ 4; "Morton Decl.," Dkt. # 19-2, Ex. B ¶ 5; "Derbin Decl.," Dkt. # 19-3, Ex. C ¶ 3; "Marlow Decl.," Dkt. # 19-4, Ex. D ¶ 3; "Johnson Decl.," Dkt. # 19-5, Ex. E ¶ 4.)

Plaintiff Edward Glenn Lewis ("Lewis") worked for Defendant from July 8, 2013, to September 20, 2014, as a heavy equipment operator. (Lewis Decl. ¶¶ 3, 6.) Lewis was responsible for uploading fuel from the Kermit Yard and transporting it to the job sites to fuel the track-hoe that he operated on work sites in the Permian Basin. (Id. ¶¶ 4–5.) Lewis would transport the fuel and other employees to the worksite, which could be up to two hours away, where he would operate the track-hoe to dig pipeline ditches. (Id. ¶¶ 5–6.) At the end of the day, Lewis returned to the Kermit Yard, offloaded supplies, completed paperwork, and

2

prepared for the next day of work.  (Id. ¶ 7.)  According to Defendant, Lewis also worked as a foreman during his time as an employee.  (Cason Decl. ¶ 9.)

Plaintiff Mark Morton ("Morton") worked for Defendant from July 2013 to September 2014.  (Morton Decl. ¶ 2.)  Morton was also responsible for uploading fuel at the Kermit Yard before traveling to a job site, which could be up to two hours away, where he worked as a "spotter" and assistant track-hoe operator.  (Id. ¶¶ 6–7.)  After completing work at the job site, Morton returned to the Kermit Yard and performed work including organizing supplies and picking up trash.  (Id. ¶ 8.)

Plaintiff Don Brewster ("Brewster") did not submit a declaration. Defendant submitted the declaration of Mike Cason ("Cason"), Defendant's Director of Operations, stating that Brewster worked as a mechanic at the Kermit Yard.  (Cason Decl. ¶ 9.)  Plaintiffs have also submitted the declarations of three opt-in plaintiffs who work or worked for Defendant out of the Kermit Yard: Clyde Derbin ("Derbin"), an equipment operator and foreman (Derbin Decl. ¶¶ 4–5); Philip Marlow ("Marlow"), a foreman and superintendent responsible for overseeing several foremen and their crews (Marlow Decl. ¶ 4); and Billie Jo Johnson ("Johnson"), a welder's helper (Johnson Decl. ¶ 5.)

Plaintiffs allege that Defendant's policy was to pay its workers for only ten hours of work per day despite the fact that the typical workday was

3

regularly more than ten hours.  (Lewis Decl. ¶ 8; Morton Decl. ¶ 9; Derbin Decl. ¶ 7; Marlow Decl. ¶ 5; Johnson Decl. ¶ 6.)  Plaintiffs allege that they were not compensated for work performed at the Kermit Yard, travel to worksites from the Kermit Yard, or return travel to the Kermit Yard at the end of the day.  (Lewis Decl. ¶ 9; Morton Decl. ¶ 8; Derbin Decl. ¶ 14; Marlow Decl. ¶¶ 8, 11; Johnson Decl. ¶ 10.)  Plaintiffs allege that because of Defendant's policy of limiting pay to ten hours per day, they were not paid overtime for all hours worked over forty hours per week.  (Lewis Decl. ¶¶ 8–11; Morton Decl. ¶ 9; Derbin Decl. ¶¶ 7, 14; Marlow Decl. ¶¶ 10, 14; Johnson Decl. ¶¶ 9–10.)  Additionally, Derbin alleges that while foreman, he was told not to report more than ten hours per day for employees working on his job site, and that when he attempted to accurately report the hours worked by his employees, he was told he would be fired if he did it again.  (Derbin Decl. ¶ 13.)  Marlow also alleges that while a foreman, he was told by Cason to never report more than ten hours of work per day for Kermit Yard employees.  (Marlow Decl. ¶ 15.)

In addition to an hourly rate, Plaintiffs received compensation, labeled "per diem" pay, of approximately $100 per day.  (Lewis Decl. ¶ 13; Morton Decl. ¶¶ 4, 10; Derbin Decl. ¶¶ 4, 15; Marlow Decl. ¶ 13; Johnson Decl. ¶ 11.)  Plaintiffs allege that the per diem wages were not tailored to the actual out-of-pocket expenses incurred by Plaintiffs in the course of their work for Defendant, and

4

therefore should have been included in calculating their rate of overtime pay. (Lewis Decl. ¶ 13; Morton Decl. ¶¶ 10, 12; Derbin Decl. ¶ 15; Marlow Decl. ¶ 13; Johnson Decl. ¶ 11.)

On February 19, 2015, Plaintiffs filed a Complaint in this Court alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Portal-to-Portal Pay Act, 29 U.S.C. §§ 251–262, on behalf of themselves and all similarly situated persons employed by Defendants in the three years prior to filing the complaint. (Dkt. # 1.) Plaintiffs seek unpaid overtime wages, liquidated damages, and attorneys' fees and costs. (Id. ¶ 81.)

On July 17, 2015, Plaintiffs filed the instant Motion to Conditionally Certify a Collective Action and Issue Notice along with supporting documentation. (Dkt. ## 18, 19.) Defendant filed a Response in opposition on August 8, 2015. (Dkt. # 22.) Plaintiffs filed a Reply on August 17, 2015. (Dkt. # 27, 28.)

## LEGAL STANDARD

An employee may bring an action for violating the minimum wage and overtime provisions of the FLSA either individually or as a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Because the FLSA requires employee-class members to affirmatively opt-in, a plaintiff can seek "conditional class certification" from the court, which permits the plaintiff to "send[] [a] court-approved written notice to employees, who in turn

become parties to a collective action only by filing written consent with the court." Genesis Healthcare Corp. v. Symczk, 133 S. Ct. 1523, 1527 (2013) (citations omitted).

Although the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class or grant a notice in a § 216(b) action, the majority of courts within the Fifth Circuit have adopted the approach set forth in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987). Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (noting acceptable approaches include either the Lusardi approach or the "spurious class action" approach set forth in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990)), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Vanzzini v. Action Meat Distribs., Inc., 995 F. Supp. 2d 703, 719 (S.D. Tex. 2014) (following Lusardi); Mateos v. Select Energy Servs., LLC, 997 F. Supp. 2d 640, 643 (W.D. Tex. 2013) (same); Tice v. AOC Senior Home Health Corp., 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (same); Marshall v. Eyemasters of Tex., Ltd., 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same).

The Lusardi approach is a two-stage inquiry involving a "notice stage" and a merits or decertification stage. Mooney, 54 F.3d at 1213–14. At the notice stage, a "court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the

class." Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010).  If the court determines that the proposed class members are similarly situated and conditional certification is warranted, the plaintiff has the opportunity to send notice to potential class members, who are then permitted to opt in to the suit.  Id. at 519.  "The court's determination at this stage is made using a 'fairly lenient standard' because the court generally has minimal evidence" and because "[t]he remedial nature of the FLSA . . . militate[s] strongly in favor of allowing cases to proceed collectively."  Lee v. Metrocare Servs., 980 F. Supp. 2d 754, 759 (N.D. Tex. 2013); Tolentino v. C & J Spec-Rent Servs. Inc., 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010); see also Jones v. SuperMedia Inc., 281 F.R.D. 282, 287 (N.D. Tex. 2012); Allen v. McWane, Inc., No. Civ.A.2:06-CV-158, 2006 WL 3246531, at *2 (E.D. Tex. 2006).

      Once plaintiffs have opted in and discovery is largely complete, the defendant can file a decertification motion, asking the court to reassesses whether the claimants are similarly situated.  Mooney, 54 F.3d at 1214.  At that point, the court can fully evaluate the merits of class certification and can choose to decertify the class.  Id.  The Court's analysis here need only address the first stage of the inquiry.

DISCUSSION

Plaintiffs seek to certify a class consisting of all current and former hourly-paid employees of Defendant based out of its facility in Kermit, Texas, at any time during the three-year period preceding the filing of Plaintiffs' Complaint.[1] (Dkt. # 19-6, Ex. F at 1.) Conditional certification is proper when the class members were the victims of a single decision, policy, or plan infected by discrimination. Mooney, 54 F.3d at 1214. Accordingly, a plaintiff must generally make three showings to obtain conditional certification: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist, (2) [] those aggrieved individuals are similarly situated to the plaintiff in relevant aspects given the claims and defenses asserted, and (3) [] those individuals want to opt in to the lawsuit." Casanova v. Gold's Tex. Holdings Grp., Inc., No. 5:13-CV-1161-DAE, 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014) (quoting Walker v. Honghua Am., LLC, 870 F. Supp. 2d 462, 465–66 (S.D. Tex. 2012)). There is no dispute that Plaintiffs have set forth a reasonable basis for finding that aggrieved individuals exist and that such individuals want to opt in to the lawsuit, and the only element at issue here is thus whether Plaintiffs are similarly situated to the proposed class.

---

[1] Plaintiffs' proposed order requests certification of all of Defendant's hourly employees irrespective of location. (Dkt. # 18-1.) Plaintiffs' Reply clarifies, however, that they only seek certification of Defendant's Kermit Yard employees. (Dkt. # 27 at 1 n.1.)

A.   Similarly Situated

Defendants argue that Plaintiffs' proposed class is too broad, as it would include "at least twenty-three distinct job titles, each with unique duties and many variables in time-keeping policies and practices." (Dkt. # 22 at 5.) Defendants further argue that Plaintiffs are not similarly situated to the proposed class members because the proposed class members include a variety of different trades which differ in job duties, off-site work requirements, time-keeping practices, and expenses covered by per diem pay. (Id. at 6–8.) Plaintiffs respond that although their job titles vary, Plaintiffs and the proposed task members were all engaged as hourly construction services employees subject to Defendant's practice of limiting pay to ten hours of work per day and failing to include "per diem" pay in the calculation of overtime rates. (Dkt. # 18 at 7.)

"The potential class plaintiffs are considered similarly situated to the named plaintiffs if they are similarly situated with respect to their job requirements and . . . their pay provisions." Tolentino, 716 F. Supp. 2d at 649–50 (internal quotation marks omitted). "The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated," Maynor v. Dow Chem. Co., No. CIV. A. G-07-0504, 2008 WL 2220394, at *7 (S.D. Tex. May 28, 2008), and "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement," Walker v. Honghua Am., LLC,

870 F. Supp. 2d 462, 468 (S.D. Tex. 2012). "[T]he relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." Tice v. AOC Senior Home Health Corp., 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011). The purpose of the similarly situated requirement is to ensure that collective actions will promote the economies of scale envisioned by the FLSA. Maynor, 2008 WL 2220394, at *7.

Here, the Court finds that Plaintiffs are similarly situated to the proposed class. The Court first notes that the fact that Lewis served in a managerial capacity during part of his time with Defendant, standing alone, does not preclude him from representing employees who worked for Defendant in a non-managerial capacity. See, e.g., Aguilar v. Complete Landsculpture, Inc., No. Civ.A.3:04 CV 0776 D, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) (finding that foremen with hiring and firing authority were similarly situated to laborers where all employees were compensated under the same pay scheme).

Additionally, while members of the proposed class have different job functions based on their specific roles as welders, electricians, and vehicle operators, among others (Cason Decl. ¶ 5), these differences do not preclude a finding that the members of the proposed class are similarly situated to the named Plaintiffs. See Pedigo v. 3003 South Lamar, LLP, 666 F. Supp. 2d 693, 696–97 (W.D. Tex. 2009) (holding that positions "need not be identical" for conditional

certification).  Lewis and Morton each declare that they were responsible for performing preparatory tasks and attending meetings at the Kermit Yard in the morning, traveling up to two hours to a job site, returning to the Kermit Yard at the end of the day, and performing additional work at the Kermit Yard before leaving for home.  (Lewis Decl. ¶¶ 5–7; Morton Decl. ¶¶ 6–8.)  Three opt-in plaintiffs have similarly declared that they arrived at the Kermit Yard in the morning to prepare for the work day, traveled to a job site, and returned to the Kermit Yard to offload equipment and complete paperwork and other tasks.  (Derbin Decl. ¶¶ 8–11; Marlow Decl. ¶¶ 6–9; Johnson Decl. ¶¶ 7–9.)  While the particular tasks performed were specific to their particular job descriptions, Lewis, Morton, and the opt-in plaintiffs all declare that they were responsible for work performed at, and travel to and from, the Kermit Yard, for which they were not paid.  The named and opt-in plaintiffs also all declare that they were paid a "per diem" of approximately $100 per day that did not correspond to their actual expenses and was not factored into their overtime rate of pay.  (Lewis Decl. ¶ 13; Morton Decl. ¶¶ 10, 12; Derbin Decl. ¶ 15; Marlow Decl. ¶ 13; Johnson Decl. ¶ 11.)  Lewis and Morton's pay provisions and duties are thus sufficiently similar to those of the proposed class to render them similarly situated to the proposed class.

Defendant also argues that different timekeeping practices and work duties performed at the Kermit Yard among the different the job positions included

in the proposed class preclude the class from being certified as similarly situated. The manner in which employees' time was recorded, however—whether by a foreman on behalf of his crews or by the individual employees themselves—does not render the class insufficiently similar where Plaintiffs allege that they were paid for only ten hours of work per day regardless of how much time they recorded.  Similarly, the particular duties of different employees at the Kermit Yard prior to their travel to a job site—including planning, loading supplies and tools, and fueling vehicles—are the sort of "slight differences" in duties or functions that do not run afoul of the similarly situated requirement.  See Walker, 870 F. Supp. at 468.  Plaintiffs have submitted sufficient evidence to establish that they performed the same basic tasks and were subject to the same pay practices as the proposed class, and have thus carried their burden of showing that they are similarly situated at this stage of the Lusardi analysis.

Defendant also argues that Plaintiff Brewster is particularly unqualified to serve as a representative of the proposed class.  Brewster did not submit a declaration.  Cason's declaration states that Brewster was the only mechanic who worked out of the Kermit Yard during the relevant period, that he recorded his own time, that he began and ended his day at the Kermit Yard, and that he did not have "preliminary or postliminary duties."  (Cason Decl. ¶¶ 9–10, 12.)  As noted above, the particulars of an employee's job functions do not

preclude a finding of substantial similarity where employees have the same basic responsibilities and are subject to the same pay practices, and thus the fact that Brewster was the only mechanic and was responsible for recording his own time does not weigh against allowing him to represent the proposed class.  The fact that he "began and ended his day" at the Kermit Yard does not differ from the declarations of the other Plaintiffs and opt-in plaintiffs, who also began and ended their days at the Yard.  While it is possible that further discovery could show that Brewster's responsibilities or his pay scheme were so different from those of other hourly employees working out of the Kermit Yard as to preclude him from serving as a class representative, the evidence currently before the Court does not require denying him conditional representative status at this stage.

Finally, Defendant argues that the individual circumstances of its hourly employees with respect to the number of compensable hours actually worked and actual expenses relative to their per diem pay render this case unsuitable for conditional certification.  This argument suggests that substantial similarity must be present with regard to the means of proof, and particularly the calculation of damages, to allow for conditional certification.  Neither the FLSA nor the case law interpreting it, however, supports such a requirement.  Requiring substantial similarity ensures the economy of scale and judicial efficiency envisioned by the FLSA by avoiding the need for individualized inquiries into

whether a defendant's policy violates the FLSA as to some employees but not others.  See Tolentino, 716 F. Supp. 2d at 647 ("[T]here must be a showing of some . . . nexus that binds the claims so that hearing the cases together promotes judicial efficiency.").  The calculation of damages owed to members of the class, assuming that liability is found, is a separate question that will necessarily depend in part on the particular circumstances of the class members.  All that is required for conditional certification is that Plaintiffs and the proposed class members show that they are subject to the same pay practices and have the same basic job responsibilities as the proposed class, and Plaintiffs have carried that burden here.

Because Plaintiffs have demonstrated a basis for conditional certification, the Court **GRANTS** their Motion for Conditional Class Certification and defines the class as:

> All employees of Brazos Rock, Inc. who were based and worked out of its facility in Kermit, Texas, and paid at an hourly wage and at any time during the period from [three years prior to the date of this Order] to [the date of this Order].

B.    Plaintiffs' Proposed Notice

Plaintiffs seek approval of a proposed notice setting out the scope of the litigation and the opt-in procedure, as well as a proposed consent to join form that potential plaintiffs can use to opt in to the litigation.  (Dkt. # 19-6.)  Plaintiffs request production of the names, addresses, phone numbers, email addresses, last four digits of social security numbers, dates of birth, and dates of employment of

all persons who worked for Defendant as hourly paid employees between February 19, 2012, and the present.  (Dkt. # 18 at 10.)  Plaintiffs propose to send the notice by email and first class mail.  Plaintiffs request a 90-day notice period and permission to send a postcard reminder to class members who have not returned executed notices of consent by 30 days prior to the deadline to join.  (Id.)

       Defendant has requested that the notice be revised to specify that potential class members who join the suit will be bound by the judgment of the suit, whether favorable or unfavorable.  Plaintiffs have agreed to this revision, which the Court approves.

       Defendant also requests that the Court require a third-party administrator to issue notice at Plaintiffs' expense.  Defendant has provided no reasoning for this request, and Plaintiffs represent that they are able to issue notice without the help of a claims administrator.  This Court has routinely allowed Plaintiffs to issue notice on their own behalf following conditional certification.  See, e.g., Garcia v. TWC Admin., LLC, No. SA:15-CV-985-DAE, 2015 WL 1737932, at *8 (W.D. Tex. Apr. 16, 2015); Pacheco v. Aldeeb, No. 5:14-CV-121-DAE, 2015 WL 1509570, at *8–9 (W.D. Tex. Mar. 31, 2015).  Absent a convincing reason to do so, the Court will not add to the expense of this litigation by requiring that notice be sent through a third-party administrator.

The Court does, however, find it necessary to limit Plaintiffs' proposed notice in certain respects.  First, the proposed notice states that persons joining the lawsuit will be represented by Plaintiffs through their counsel.  To avoid giving the inaccurate impression that class members must pursue their claims through Plaintiffs' counsel or not at all, the notice must advise putative class members of their right to retain separate counsel and pursue their rights independently from the class.  See, e.g., Lee v. Veolia ES Indus. Servs., Inc., No. 1:12-CV-136, 2013 WL 2298216, at *20 (E.D. Tex. May 23, 2013); Gambo v. Lucent Techs., Inc., No. 05 C 3701, 2005 WL 3542485, at *7 (N.D. Ill. 2005).

Second, certain of the disclosures requested by Plaintiffs are inappropriate at this stage of the case.  "The benefits of a collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'"  Behnken v. Luminant Min. Co., LLC, 997 F. Supp. 2d 511, 523 (N.D. Tex. 2014) (quoting Hoffman-La Roche, 498 U.S. at 170).  Thus, the Court's aim is to ensure that putative class members actually receive notice in a timely manner.  While there is not a great deal of uniformity with respect to the types of information courts generally order defendants to produce, many have taken the view that putative class members' names and addresses are sufficient to ensure that

notice is received.[2]  E.g., Altiep v. Food Safety Net Servs., Ltd., No. 3:14-CV-00642-K, 2014 WL 4081213, at *6 (N.D. Tex. Aug. 18, 2014) (denying plaintiffs' request for telephone numbers and email addresses because "Plaintiffs have shown no reason that sending a letter to a potential plaintiff's last known address would provide inadequate notice"); Aguayo v. Bassam Odeh, Inc., No. 3:13-CV-2951-B, 2014 WL 737314, at *6 (N.D. Tex. Feb. 26, 2014) (limiting production to putative class members' names, last known addresses, and dates of employment).

To protect the privacy and security concerns of potential class members, the Court will not require Defendants to produce the phone numbers, birth dates or the last four digits of social security numbers.  Absent objection from Defendant, however, the Court will allow the production of email addresses in the interest of providing for efficient and effective notice.  For those putative class members whose notices are returned as undeliverable, Plaintiffs may request the production of additional information to assist them in reaching those individuals.  See Heeg v. Adams Harris, Inc., 907 F. Supp. 2d 856, 865–66 (S.D. Tex. 2012)

---

[2] With respect to Social Security numbers in particular, privacy and security concerns outweigh the interest in ensuring that notice is received at this stage.  See White v. Integrated Elec. Techs., Inc., No. 12-359, 2013 WL 2903070, at *10 (E.D. La. June 13, 2013) (denying plaintiffs' request for production of the last four digits of Social Security numbers because plaintiffs were adequately equipped to notify all potential class members and privacy concerns outweighed the benefits of disclosure);

(noting that plaintiffs' counsel could request additional information for putative class members whose notices were returned as undeliverable).

Third, the Court will limit the notice period to 60 days after the date of this Order, and the deadline for filing notices of consent to join will be set at 15 days following the expiration of the 60-day notice period. Finally, with respect to the proposed reminder notice, there is a split among district courts as to whether reminder notices to putative class members are proper in FLSA actions. See Guzelgurgenli v. Prime Time Specials, Inc., 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012) (noting that some courts have denied requests for reminder notices on the grounds that reminders are unnecessary and could be interpreted as encouragement by the court to join the lawsuit, while others have recognized that a reminder is appropriate when sent by plaintiffs' counsel and not the court, and collecting cases). Because Defendant has not argued that the reminder is unnecessary here, the Court will grant permission to send such a reminder to potential class members who have not filed notices of consent within 30 days of the expiration of the notice period.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Conditional Certification of a Collective Action and Authorization for Notice. (Dkt. # 18.)

It is further **ORDERED** that the parties confer and prepare an agreed-upon notice and consent form consistent with this Order. The parties shall jointly submit such forms to the Court by October 21, 2015.

It is further **ORDERED** that Defendant produce, in a usable electronic format, the names, last known addresses, phone numbers, email addresses, and dates worked of all potential class members within ten (10) days of the entry of this Order.

It is further **ORDERED** that Plaintiffs' counsel shall be permitted to send notice of this action in the form set forth in the agreed-upon notice by mail and email for a period of sixty (60) days from the date Defendant provides Plaintiff with the required contact information. Plaintiffs' counsel shall have until fifteen (15) days after the expiration of the sixty-day notice period, ending sixty (60) days after the date Defendant provides Plaintiff with the required contact information, to file all Notices of Consent to Join from putative class members.

It is further **ORDERED** that Plaintiffs shall be permitted to send a postcard remember to putative class members who have not returned executed notices of consent within thirty (30) days prior to the expiration of the sixty (60) day notice period.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, October 14, 2015.

_____

David Alan Ezra
Senior United States Distict Judge